No. 14,821.

IN RE INTERROGATORIES BY THE GOVERNOR.

(106 P. [2d] 464)

Answers filed October 14, 1940.

Mr. BYRON G. ROGERS, Attorney General, Mr. JOSEPH D. ISKOW, Assistant, appearing for the Governor.

Mr. MALCOLM LINDSEY, Mr. WAYNE D. WILLIAMS, Mr. J. FREDERICK SCHNEIDER, Mr. WILLIAM L. COHN, Mr. THORNTON H. THOMAS, JR., amici curiae.

*En Banc.*

PER CURIAM.

His Excellency, the Honorable Ralph L. Carr, governor of the state of Colorado, has requested this court to answer three interrogatories.

The first interrogatory is as follows:

■ "First: Are all or any of the employees in the county departments of public welfare state employees in the classified civil service as provided by article XII, section 13 of the Colorado Constitution?"

No, the employees in the county department of public welfare of any county, as now provided for by chapter 5, S.L. Second Extraordinary Session 1936, whether the county be the City and County of Denver or any of the other sixty-two counties, are not state employees in the classified civil service within the meaning of section 13 in article XII of the Colorado Constitution.

The second interrogatory is as follows:

■ "Second: If the court holds that all or any of the employees of the county departments of public welfare, including all or any of the employees of the welfare department of the City and County of Denver, are not employees in the state classified civil service as provided by article XII, section 13 of the Colorado Consitution, has the state department of public welfare the constitutional jurisdiction to provide for the selection, retention and promotion of all such employees on a basis of merit and fitness?"

Yes, constitutionally such jurisdiction may be conferred. Whether it has been is a question not considered because not included in the interrogatory.

The foregoing answers to the first and second interrogatories make unnecessary an answer to the third, which is as follows:

"Third: If the court holds that all or any of the persons so employed in the county departments of public welfare are under the jurisdiction of the State Civil Service Commission, will that holding apply to the City and County of Denver, within the purview of the Twentieth Amendment to the Colorado Constitution?"

MR. JUSTICE FRANCIS E. BOUCK dissents as to the answer to the second interrogatory.

MR. JUSTICE FRANCIS E. BOUCK dissenting.

When by our order of October 8, 1940, this court decided to "assume jurisdiction" herein, it necessarily meant that a careful reading of the Governor's interrogatories had been had and that after oral arguments on Octobert 4 the court considered itself properly called upon, by the facts presented, to answer the interrogatories under the constitutional provision which says: "* * * The supreme court shall give its opinion upon important questions upon solemn occasions when required by the governor, the senate, or the house of representatives; and all such opinions shall be published in connection with the reported decisions of said court." Colo. Const., article VI, §3. Of course the interrogatories would be expected to be answered plainly, directly, and unequivocally.

To one's amazement it appears that the emergency has not been met. The opinion leaves the problems exactly where they were before. The answer to the first interrogatory, deciding the employees of the county welfare departments to be county employees, simply emphasizes that the state's existing civil service provisions for state employees do not apply to those county employees.

The crucial question is whether, under the provisions of our Constitution and statutes as they now are, the state board of welfare has power to introduce a merit system for employees of the county departments.

I cannot agree with the statement of the opinion to the effect that the above question has not been presented by the interrogatories.

It is true that the portions quoted in the opinion do not contain all the facts. However, the opinion omits the substantial part of the interrogatories which appears as a series of whereas-clauses, which are not as a whole

or in part a complete sentence either gramatically or otherwise. According to elementary rules of interpretation, whether of statutes or other documents, each instrument — in this case the interrogatories — must be judged in its entirety and all parts compared with one another. The system of acquainting the court with the facts by a recital in a preamble is not new. It is a time-honored method in Colorado as appears from *In Re Continuing Appropriations*, 18 Colo. 192, 32 Pac. 272, and from numerous other cases in our Supreme Court reports.

In order to determine just what facts have been·submitted by the interrogatories, then, we must read the entire document presented by the Governor. I therefore quote in the footnote(*) those portions of the interrogatories which were omitted in the opinion of the court. It is manifest therefrom that we have had before us all facts necessary for us to decide both as to the emergency existing and as to the constitutional and statutory provisions involved herein.

Not only am I convinced that the full recital of facts justified this court's assuming jurisdiction and answering the first and third interrogatories as it did, but I am of the opinion that under the recitals our answer to the second interrogatory should have been: "Yes, the state board of public welfare *has* the jurisdiction referred to."

At any rate, the Governor was entitled to a decision on the second interrogatory one way or the other.

---

(*) "To the Honorable the Supreme Court of Colorado:

"Whereas, Section 2(a)(5) of Title I, Section 402(a)(5) of Title IV, and Section 1002(a)(5) of Title X of the Social Security Act as amended by the last session of Congress read as follows: 'Provide such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Board shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by

the Board to be necessary for the proper and efficient operation of the plan'; and

"Whereas, pursuant to the aforementioned amendment, 'Standards for a Merit System of Personnel Administration in Statement Employment Security and State Public Assistance Agencies' were adopted by the Social Security Board; and

"Whereas, the Standards referred to above provide at the top of Page 2 thereof that they shall be applicable to all personnel, both State and local, engaged in the administration of the old-age assistance, aid to dependent children and aid to the blind programs provided for by the Social Security Act with certain exceptions not herein pertinent; and

"Whereas, pursuant to the aforementioned amended Social Security Act and the Standards for a Merit System of Personnel Administration, the State Department of Public Welfare at its regular meeting on December 28, 1939, adopted a resolution to place all employees of county, as well as of State departments of public welfare, under the Standards for a Merit System of Personnel Administration; and

"Whereas, the Standards for a Merit System of Personnel Administration, promulgated by the Social Security Board, provide that if a State has a State-wide civil service system operating under standards substantially equivalent to those provided for by such Federal Standards, the State civil service system should be applicable to the State Social Security agencies referred to above; or in the absence of a State civil service system, with substantially equivalent standards, there is to be established a merit system administered by an impartial body referred to as the Merit System Council, the members of which are to be appointed by the administrative agency or by the Governor on recommendation of the administrative agency, for stated over-lapping terms, no member of which is to be otherwise employed as an official or employee of any of the State agencies affected; and

"Whereas, in order for the State of Colorado to continue to participate in the benefits provided for by the Social Security Act relative to old-age assistance, aid to dependent children and aid to the blind, the State plan must either continue to provide for the establishment or designation of a single State agency, to administer the plan, or provide for the establishment or designation of a single State agency to supervise the administration of the plan; and

"Whereas, Article XII, Section 13 of the Constitution of the State of Colorado established a State civil service and provided for laws to enforce the provisions of said article; and

"Whereas, the constitutional amendment provides for setting up the classified civil service of the State which shall comprise all appointive public officers and employees and the places which they hold, excluding certain positions not pertinent hereto; and further provides

that appointments, employments and promotions in such classified civil service shall be according to merit and fitness; and

"Whereas, pursuant to said constitutional provision enabling legislation was enacted, the same being Chapter 36 of the 1935 Colorado Statutes Annotated; and

"Whereas, the State Department of Public Welfare, the State Board of Public Welfare, the County Boards of Public Welfare and the County Departments of Public Welfare were created by the Welfare Organization Act of 1936, being Chapter 5, Session Laws of Colorado, 2nd Extraordinary Session 1936, and Section 4 of Chapter 5 of the Welfare Organization Act sets forth the duties of the State Board as follows:

" 'The State Board shall adopt all policies, rules and regulations for the government of the State Department and all administrative and executive duties and responsibilities of the State Department shall be discharged by the Director, subject to the authority of the State Board. The State Board shall have the power and it shall be its duty to fix minimum standards of service and personnel, and to formulate salary schedules for the classified service based upon training, experience and general ability for persons selected for positions in the State Department and in the County Departments of Public Welfare hereinafter created, all of which persons shall be bona fide citizens and residents of the State of Colorado.' And

"Whereas, Section 8 of Chapter 5 of the Welfare Organization Act provides as follows:

" 'The State Department shall be charged with the administration or supervision of all the welfare activities of the State as hereinafter provided, which welfare activities hereinafter enumerated are hereby declared to be State as well as county purposes.

" 'The State Department shall:

" '1. Administer or supervise all forms of public assistance including general home relief, outdoor and indoor care for persons in need, old age assistance, aid to dependent children, aid to the blind; and such other welfare activities or services as may be vested in it by law;

" '2. Administer or supervise all child welfare activities, and to cooperate with the Children's Bureau of the United States Department of Labor in establishing, extending and strengthening child welfare services.

" '3. Provide services to county governments including the organization and supervision of county welfare departments for the effective administration of welfare functions and the compilation of statistics and necessary information relative to public welfare problems throughout the State.

" '4. Prescribe qualifications and salary standards for welfare personnel in State and county welfare departments;

" '5. Assist other departments, agencies and institutions of the State and Federal Governments, when so requested, by performing services in conformity with the purposes of this Act;

" '6. Act as the agent of the Federal Government in welfare matters of mutual concern in conformity with this Act and in the administration of any Federal funds granted to the State to aid in the furtherance of any functions of the State Department;

" '7. Under rules and regulations prescribed by the State Department, designate county departments to serve as agents in the performance of all State welfare activities in the county; and

" '8. Administer such additional welfare functions as are hereby vested in it by law.' And

"Whereas, Section 11 of Chapter 5 of the Welfare Organization Act provides the duties of the County Board as follows:

" 'It shall be the duty of the county board of public welfare to appoint a County Director of Public Welfare who shall be the executive and administrative officer of the county department and who shall serve as secretary of the county board. The county director shall be appointed from a list of eligibles submitted by or through the county board and certified by the State Department of Public Welfare as meeting qualifications prescribed by it. The tenure of the county director and of the county administrative staff shall be at the pleasure of the county board and the salary of the county director shall be fixed by the county board in accordance with the salary schedule prescribed by the State Department.' And

"Whereas, Section 13 of Chapter 5 of the Welfare Organization Act provides for the county staff as follows:

" 'The County Director, with the approval of the county board, shall appoint such staff as may be necessary to administer welfare activities within his county and to perform all other duties required of him. Such appointments, with the exception of the clerical staff, shall meet the qualifications prescribed by the State Department but need not be referred to it for approval. The salary of the members of the staff shall be fixed by the county board in conformity with the salary schedule prescribed by the State Department.' And

"Whereas, the Welfare Organization Act as amended, being Chapter 139 of the Session Laws of 1939, provides that three-fourths of the administrative cost of the county department shall be reimbursed to the county by the State Treasurer on authorization of the Director of Public Welfare, from funds appropriated or made available for this purpose, if the county is operated in accordance with the rules and regulations prescribed by the State Board of Public Welfare; and

"Whereas, the State Board of Public Welfare is in doubt as to

which procedure to adopt, namely, whether by rule and regulation to place all employees of both county and State welfare departments under State civil service, or whether by rule and regulations to provide for a merit system council under which all county employees of welfare departments would be placed; and

"Whereas, if the State Board of Public Welfare were to adopt either one of the aforementioned procedures and any mistake should be made in such adoption, it might affect the participation of the Social Security Board in the Colorado State plan, insofar as receipt of Federal funds is concerned, and it would result in untold hardship and suffering to large numbers of persons within the State, to-wit, recipients of old-age pensions, aid to blind, aid to dependent children, and all employees of county and State departments of public welfare, and would seriously affect and possibly undermine the entire administrative procedure of both county and State welfare departments, and would further subject the State to great and unnecessary expenditures; and

"Whereas, Section 2 of Article IV of the Constitution provides that 'the supreme executive power of the State shall be vested in the Governor, who shall take care that the laws be faithfully executed,' and I, both as supreme executive under such section and as Governor and head of the executive department of the State government which includes the State Department of Public Welfare, am in doubt as to which procedure should be adopted and am in doubt how I should properly exercise my authority; and

"Whereas, it is essential that the State Department of Public Welfare perform its functions and duties in a legal and proper manner;

"Now, therefore, in view of the premises, I believe the question of the procedure to be adopted by the State Board of Public Welfare is important and that a solemn occasion has arisen under the various Federal acts, Colorado constitutional amendments, and statutory provisions heretofore cited and quoted, and accordingly I request your honorable court to render its opinion upon the following interrogatories:" Thereupon follow the specific questions quoted in the majority opinion.